# CHARLESTON.

AUSTIN MANUFACTURING COMPANY *v.* COFFMAN.

Submitted March 15, 1910.    Decided May 9, 1911.

EVIDENCE—*Parol Evidence—Contradicting Written Contract.*
    A written contract cannot be added to or contradicted by oral evidence of different stipulation.  (p. 378).

Error to Circuit Court, Mercer County.
Action by the Austin Manufacturing Company against W. H. Coffman, trading as the W. H. Coffman Coke Company. Judgment for plaintiff, and defendant brings error.

*Affirmed.*

*Harold A. Ritz,* for plaintiff in error.

*McClaugherty & Peters,* for defendant in error.

BRANNON, JUDGE:

Austin Manufacturing Company, a corporation, doing business at Chicago, brought an action of *assumpsit* in the circuit court of Mercer county  against  W. H. Coffman, trading as

W. H. Coffman Coke Company, to recover a balance of the purchase money of a stone crusher sold by the Austin Company to Coffman, and recovered a verdict against Coffman, on which the court rendered judgment, and Coffman brings the case to this Court.

Coffman claims that Austin Company had sold him not only a stone crusher, but a boiler to be of 100 horse power and an engine of 75 horse power, and that the boiler was not of 100 horse power, and the engine was not of 75 horse power, and that they failed to do the work required of them; and he filed a notice of recoupment seeking to abate for damages therefrom $1500. The case involves no law, not a single point of law, and only question of fact. The Austin Company claimed that it made no sale whatever of boiler and engine to Coffman, but only of a stone crusher. Such was the matter in contest before the jury. Coffman in an equivocal manner, which is the character of his whole evidence, if it is not against himself, stated that the Austin Company sold him boiler and engine. Ramsey, who sold as agent the crusher to Coffman and made the contract with him, swears flatly and definitely that the Austin Company sold no boiler or engine, but that Houston, Stanwood and Gamble sold them. Thus we have a direct conflict of oral testimony, and the decision of the jury must stand, on familiar principles. But it does not stand alone on that principle; for the written evidence and the action of Coffman are overwhelming to prove the recitude of that verdict. It is proven that the Williams Contractor Supply Company, of Columbus, Ohio, is a sale agent for machinery manufactured by others, it manufacturing nothing. It sent Ramsey to see Coffman about the purchase of the crusher. The start of the matter is that Coffman wrote the Austin Company proposing to buy, not an engine and boiler, but only a crusher. In response the Austin Company wrote him a letter saying, "We are in receipt of your letter of the 30th ult. for stone crushing machinery." and sent him catalogues of stone crushers, and otherwise speaking of only a proposition to sell a stone crusher. As a postscript to the letter we find, "All our business in that section of the country is handled through our Columbus, Ohio, branch office, the Williams Contractor Supply Company, to whom we have referred your

letter with instructions for them to get in touch with you and which they will do promptly." On this postscript Coffman would hang his case, seeking from it to show that he purchased from the Austin Company the boiler and engine. Ramsey was an agent, not of the Austin Company, but of the Williams Supply Company. He went to make contracts of sale for machinery and other things for the Williams Supply Company, which simply took orders for things through Ramsey, and would then send those orders for filling to this, that and the other manufactory according to the article wanted. The Williams Supply Company was a mere intermediary. It simply procured orders for machinery or other things and sent those orders to various manufacturers. Now, that postscript was a postscript of a letter written by the Austin Company to Coffman in response to Coffman's letter saying that he wished to purchase a crusher. Coffman's letter to the Austin Company never whispered of a purchase of boiler or engine, but only of a crusher, and the response letter of the Austin Company never mentioned boiler or engine. Both letters must be read together, and they never mentioned boiler or engine, but mentioned only a crusher. And the postscript cannot possibly refer to anything beyond the article mentioned in both letters. Both letters were confined to a crusher. What Coffman relies on, the postscript, itself when read with the two letters proves that this proposed purchase was only of a crusher. Not that only, when Ramsey went to Bluefield to see Coffman, Coffman gave a written order signed by Coffman addressed to the Austin Company directing it to ship to him "1 No. 5 Austin Gyratory Stone Crusher" and other things going with it, never mentioning boiler or engine. The order is a fully written contract, confined exclusively to a crusher and its accompanying utensils. This order contains the following clause: "It is fully understood that this order embodies the entire understanding; that it is not affected by any verbal statement or promises by whomsoever made." Thus we have a written contract containing all its stipulations, and Coffman would by his own oral evidence add to it a most material addition. He would contradict it. The law will not allow this. That alone ends the case, if other considerations did not. On that same day through Ramsey Coffman made a

written order signed by Coffman saying, "Purchase for W. H.
Coffman with power plant for a No. 5 crusher boiler and
engine from Houston, Stanwood and Gamble, Cincinnati, Ohio."
Thus Coffman made an explicit order to buy the boiler and
engine from Houston, Stanwood and Gamble, and he says it was
shipped from their manufactory. The Austin Company never
saw this order. It went to Houston, Stanwood and Gamble. It
is absurd to say that the purchase of the boiler and engine was
from the Austin Company. Not only that, but Houston,
Stanwood and Gamble, as Coffman himself swears, sent him
a bill for the boiler and engine and he paid them for the boiler
and engine. Why did he pay Houston, Stanwood and Gamble
for the boiler and engine if he had bought them of the Austin
Company? Coffman is an experienced man of business, of
acute intelligence. Is it not absurd to say that he could be
under the opinion that he bought the boiler and engine of the
Austin Company, or that he would pay another firm for them?
Another absurdity connected with his position arises from the
fact that the crusher price was $3,475, and the boiler and engine
cost $1,200, total $4,675. The Austin Company never render-
ed a bill for anything but their crusher to Coffman. He knew
the bill was only for the crusher. The bill rendered was for
$3,442.50, the original contract price for only the crusher
after a small abatement for a utensil belonging to the crusher
of less length than at first contemplated. Never did the
Austin Company make any demand for boiler and engine. If
it had sold the crusher, boiler and engine, why did it never
render a bill therefor? And why did Coffman accept the bill
for boiler and engine rendered by Houston, Stanwood and
Gamble and pay them for the boiler and engine if the Austin
Company was entitled to the money for a purchase from them
of the boiler and engine? Moreover, the Austin Company often
wrote to Coffman for payment, dunning him. He made four
payments amounting to $2,400, thus acknowledging the justice
of the demand. He wrote letter after letter asking indulgence
and promising payment. Those letters did not speak of a boiler
and engine. They related to the demand for the payment of the
crusher. After the claim was put in the hands of lawyers
he promised payment repeatedly, and even after the action
was brought it seems that he only asked a continuance of the

case.   He never mentioned the defect of the engine until the suit.   In all the correspondence through months and months, in more than a dozen letters from him to the Austin Company and its attorneys, he never mentioned the defect.   He said he did not discover the defect in the engine until recently.   Why not?  ˙ The verdict is clearly, plainly right on the evidence. The case is only one of evidence.

Therefore, we affirm the judgment.

*Affirmed.*